IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| JOHN SIDNEY RUPPERSBERGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civ. No. 11-00145 ACK-KJM |
| | ) |
| ROSARIO MAE RAMOS, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S COUNTER-MOTION TO DISMISS, AND ISSUING DECREE OF FORECLOSURE

For the reasons discussed below, the Court GRANTS Plaintiff's Motion for Summary Judgment and Decree of Foreclosure, and to Strike Defendant's Demand for Trial by Jury, ECF No. 110 (the "Motion"), and DENIES Defendant's Counter-Motion to Dismiss, ECF No. 119.  The Court hereby issues a decree of foreclosure in favor of Plaintiff.

## BACKGROUND

For the past nine years, Plaintiff Ruppersberger has been trying to collect on promissory notes executed by Defendant Ramos.  Years of litigation led up to Plaintiff's now-pending Motion for Summary Judgment.  Those facts are largely undisputed.

- 1 -

## I.   Initial Action and Settlement

On March 8, 2011, Plaintiff filed a Complaint in this Court to collect on two promissory notes executed by Defendant in favor of Plaintiff in the principal amount of $80,000. Compl. ¶¶ 9, 14, ECF No. 1.  Later that year, the parties reached a settlement at a conference held before Magistrate Judge Barry Kurren.  ECF No. 28.  The parties filed a stipulation for dismissal with prejudice, which provided for the Court's approval as to form only.  The Court approved as to form on January 3, 2012.  ECF No. 35.[1/]

---

[1/] The stipulation provided as follows.

1.   The parties hereby agree that the above-captioned action is dismissed and discontinued with prejudice, as to the named defendant, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

2.   Any and all claims of damages by plaintiff which are the subject of this action or otherwise arise out of any incidents alleged in the Complaint are hereby settled, as against the named defendant, by the terms of the $118,000 mortgage, promissory note and limited power of attorney (collectively hereinafter the "Settlement Documents") in full satisfaction of all claims for damages, costs, disbursement and legal fees.

3.   The Settlement Documents stated in Paragraph #2, above, were signed by defendant before a notary on December 21, 2011 and mailed to plaintiff at his 619 Wakehurst Drive, Cary, NC 27519 address.

4.   In consideration for the execution of the Settlement Documents stated in Paragraph #2, above, plaintiff hereby releases the named defendant and her heirs, executors, administrators and assigns, from any and all claims, liabilities and causes of action related to or arising out of any and all of the events set forth in the Complaint in the above-captioned action.

(Continued . . .)

## II.   Plaintiff Seeks Enforcement of the Settlement Agreement

Three years later, Plaintiff moved to enforce the settlement agreement.  ECF No. 36.  At an initial hearing, the Magistrate Judge questioned whether the Court had jurisdiction to enforce the settlement.  See ECF No. 45 at 2.  Plaintiff's Counsel filed a supplemental memorandum addressing this issue. Id. at 3-7.

Magistrate Judge Kurren issued Findings and Recommendation to Grant Plaintiff's Motion to Enforce Settlement Agreement ("F&R").  ECF No. 51.  The F&R found that the Court had "jurisdiction to enforce the settlement agreement, as the Stipulation for Dismissal incorporated the material terms of the settlement, thus granting this Court ancillary jurisdiction to enforce the settlement."  Id., Conclusions of Law ("COL") ¶ 2. Additionally, the F&R stated that the Court had diversity jurisdiction.  Id.

The F&R found that as part of the settlement agreement, Defendant executed a new $118,000 promissory note

---

5.   This settlement does not establish right or wrong on either parties' part.

6.   This Stipulation of Dismissal and any Order entered thereon shall have no precedential value or effect whatsoever and shall not be admissible in any other action or proceeding as evidence or for any other purpose except in an action or proceeding to enforce this Stipulation of Dismissal.

ECF No. 35.

(the "Promissory Note"), addendum to that note (the "Addendum"), and mortgage (the "Mortgage") in favor of Plaintiff.  <u>Id.</u> Findings of Fact ("FOF") ¶ 6(a), (f).  The Promissory Note and Mortgage are secured by rental real property, referred to as the "Kaloli Property," located at 15-1414 18th Avenue, Puna, Hawai`i, Tax Map Key No. (3) 1-5-044-114.  <u>Id.</u>  The Promissory Note provides for a quick payment upon the sale of the Kaloli Property, which was to occur by June 30, 2012.  <u>Id.</u> FOF ¶ 6(b).  The parties agreed that, if the Kaloli Property was not sold by that date, Plaintiff would be authorized to market and sell it. <u>Id.</u> FOF ¶ 6(c).  Specifically, Defendant agreed that she would cause the tenants to vacate the premises, and Plaintiff would be authorized to market the Kaloli Property for sale and move into the Kaloli Property and pay Defendant rent.  <u>Id.</u>  To enable Plaintiff to market the Kaloli Property, Defendant executed a limited power of attorney so authorizing Plaintiff.  <u>Id.</u> FOF ¶ 6(d).  If the sale proceeds were insufficient to satisfy the amounts due under the Promissory Note and Mortgage, the deficiency would be rolled over into a new promissory note and mortgage on another real property owned by Defendant, located at 12 Akamai Loop, Hilo, Hawai`i, Tax Map Key No. (3) 2-6-020-019 (the "Akamai Property").  <u>Id.</u>  ¶ 6(e).

    The F&R concluded that Defendant breached the settlement agreement by, <u>inter alia</u>, failing to pay the

Promissory Note and not attempting to sell the Kaloli Property. Id. FOF ¶ 8.  Defendant also failed to evict the tenants and interfered with Plaintiff's attempts to market and sell the Kaloli Property by removing "For Sale" signs, unsuccessfully seeking a restraining order against Plaintiff, and purportedly revoking the limited power of attorney.  Id.  The Magistrate Judge recommended that the Court appoint a Receiver to market and sell the Kaloli Property.  Id. at 8.  The F&R recommended that the Court retain jurisdiction to supervise and assist the Receiver to perform his duties, and—in the event the sale proceeds from the Kaloli Property are insufficient to satisfy the amounts owed under the Promissory Note—to consider Plaintiff's requests to compel Defendant to execute another promissory note and mortgage on the Akamai Property, impose an equitable lien or constructive trust, enter a deficiency judgment, or take other action.  Id. at 9-10.  No objections to the F&R were filed and on July 27, 2015, the Court entered its Order adopting the F&R.  ECF No. 53.

### III. A Receiver is Appointed

A Receiver was appointed to market and sell the Kaloli Property on September 4, 2015, ECF No. 54, and Charles M. Heaukulani was appointed as a substitute Receiver on May 3, 2016, ECF No. 63.  The Receiver was authorized to (1) take immediate possession and control of the Kaloli Property;

(2) collect rents from any tenants or occupants of the house;

(3) if necessary, seek to evict or eject any tenants or

occupants; and (4) if necessary, seek court authority to proceed

by way of auction in the event the Kaloli Property could not be

sold by a private sale within a reasonable time period.  Id.

Defendant was enjoined from interfering with the Receiver's

efforts to market and sell the Kaloli Property and from

attempting to regain possession and control of the Kaloli

Property during the pendency of the action.  Id. at 3-4.  The

Court also retained jurisdiction to supervise and assist the

Receiver in performing his duties.  Id. at 4.

### IV.   Receiver Seeks Court Intervention While Defendant Contests Jurisdiction

When neither Defendant nor the occupants of the Kaloli

Property were cooperative in the Receiver's efforts to market

and sell the property, the Receiver moved for a writ of

possession and ejectment (the "Motion for Writ").  ECF No. 64.

Defendant opposed the Motion for Writ and, concurrently with her

opposition, filed a Rule 60(b) motion to set aside the order

adopting the Magistrate Judge's F&R, arguing that the Court's

decision that it retained jurisdiction over the settlement

agreement was void.  ECF No. 67.  Specifically, Defendant argued

that because the stipulation of dismissal entered by the Court

in 2012 had dismissed the action with prejudice, the Court

thereafter lacked subject matter jurisdiction to enforce the settlement agreement under the U.S. Supreme Court's ruling in <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994).  ECF No. 67.

        The Court denied Defendant's Rule 60(b) motion, finding that the Court had diversity jurisdiction to enforce the settlement agreement.  ECF No. 81.  The Court noted it did not need to reach whether the settlement terms were incorporated into the stipulation of dismissal (thereby providing ancillary jurisdiction) because diversity jurisdiction existed regardless. <u>Id.</u>

        Defendant appealed the Court's order denying the Rule 60(b) motion.  ECF No. 85.  The Ninth Circuit dismissed the case due to Defendant's failure to file an opening brief.  ECF No. 95.  Defendant moved to reinstate the case, which the Ninth Circuit denied.[2]  Defendant then filed her opening brief and again moved to reinstate the case, which the Ninth Circuit also denied.  ECF No. 96.

        On December 4, 2018, the Court denied the Receiver's Motion for Writ.  ECF No. 99.  The Court found that, pursuant to Hawai`i law, in order to maintain a possession and ejectment action a plaintiff must have both the title to and right of

_____

        [2] These filings can be found on the Ninth Circuit's docket, Case No. 17-15716, ECF Nos. 19, 22.

possession of the parcel in issue.  ECF No. 99 at 11.  Neither Plaintiff nor the Receiver had ownership of or title to the Kaloli Property.  Id.  The Court noted that it would have the power to issue a writ of possession and ejectment if Plaintiff brought a foreclosure action that established title to the property.  Id. at 13.  The Court thus denied the Receiver's Motion for Writ, but granted Plaintiff leave to file an amended complaint to foreclose on the Mortgage.  Id. at 14.

On December 20, 2018, Plaintiff filed the First Amended Complaint seeking (1) foreclosure on the Kaloli Property; (2) a rollover mortgage and foreclosure on the Akamai Property; and (3) a deficiency judgment.  ECF No. 100. Defendant filed an answer and included a demand for a jury trial.  ECF No. 102.

### V.   The Instant Motion for Summary Judgment and Counter-Motion to Dismiss

On November 12, 2019, Plaintiff filed a Motion for Summary Judgment seeking (1) foreclosure on the Kaloli Property; (2) a Commissioner be appointed and directed to sell, collect rents from, and evict any occupants from the Kaloli Property; (3) if the proceeds from the sale of the Kaloli Property are insufficient to pay off the amounts owed to Plaintiff—including attorney's fees and costs—that the remaining balance be rolled over into a new promissory note and mortgage on the Akamai

Property, or, in the alternative, a deficiency judgment in Plaintiff's favor be ordered against Defendant; and (4) the Court strike Defendant's demand for jury trial.  ECF No. 110.

Defendant filed an Opposition to the Motion for Summary Judgment and also filed a Counter-Motion to Dismiss on January 23, 2020, ECF No. 119.  Plaintiff filed his Reply and Opposition to Defendant's Counter Motion to Dismiss on January 29, 2020, ECF No. 120.[3/]  Defendant filed a citation to supplemental authority on February 6, 2020, providing the Court with <u>Anago Franchising, Inc. v. Shaz, LLC</u>, 677 F.3d 1272 (11th Cir. 2012).

A hearing was held on Friday, February 7, 2020.  At the hearing, the Court raised concerns regarding the issue of compound interest.  Plaintiff stated that he would submit a declaration recalculating the amount of interest and principal,

---

[3/] The Court scheduled a hearing on the Motion for February 6, 2020.  On January 17, 2020, Defendant moved to continue the February 6 hearing or, in the alternative, to have the briefing schedule modified.  ECF No. 115. Defendant attested that Plaintiff consented to a one-week extension of the opposition and reply briefs.  ECF No. 115.  Plaintiff's brief confirmed that he had consented to the one-week extension but otherwise opposed the Defendant's motion to extend time.  ECF No. 116.  On that basis, the Court granted the one-week extension but denied a continuance of the hearing.  ECF No. 117.  When Defendant filed her Opposition, she also filed a Counter-Motion to Dismiss.  Plaintiff notes in his Reply that "in making his untimely request for an extension of time to file his Opposition, Defendant RAMOS' counsel never asked for an extension of time to file a Counter Motion, and never indicated that he would be filing a Counter Motion, which would have been rejected by Plaintiff's counsel."  Reply at 3 n.1.  As explained below, the Court acknowledges the concern but, because subject matter jurisdiction may be raised at any time, the Court elects to consider the late-filed Counter-Motion to Dismiss.  The Court ultimately heard both the Motion and Counter-Motion on February 7, 2020.

which he filed on February 14, 2020.  ECF Nos. 123, 124.  The Court provided Defendant an opportunity to respond but Defendant filed no response.  On March 30, the Court issued a minute order directing Defendant to file any objections or requesting additional time by April 9.  ECF No. 132.  Defendant again filed no response.  On April 13, Defendant's counsel sent an email apparently waiving any objection to the interest computations. ECF No. 133.

On March 5, 2020, the Court issued a minute order permitting Plaintiff to file a response specifically addressing Defendant's supplemental citation to the Eleventh Circuit's decision in Anago.  ECF No. 129.  Plaintiff filed that response on March 11, 2020.  ECF No. 130.


**STANDARD**

I.   **Summary Judgment Standard**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Federal Rule of Civil Procedure ("Rule") 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see

also <u>Broussard v. Univ. of Cal.</u>, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007) (citing <u>Celotex</u>, 477 U.S. at 323); <u>see also Jespersen v. Harrah's Operating Co.</u>, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 586-87 (1986) (citation and internal quotation marks omitted); <u>see also Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." <u>In re Barboza</u>, 545 F.3d 702, 707 (9th Cir. 2008) (citing

Anderson, 477 U.S. at 248).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.  Matsushita Elec. Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (internal citation and quotation omitted)).

## II.   Federal Rule of Civil Procedure 12(h)(3)

Rule 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  "The difference between a Rule 12(h)(3) motion and a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party."  Hamidi v. Serv. Employees Int'l Union Local 1000, 386 F. Supp. 3d 1289, 1294 (E.D. Cal. 2019) (internal quotation marks and citations omitted); see also Augustine v. United States, 704 F.2d 1074, 1075 n.3 (9th Cir. 1983) (finding the issue of subject matter jurisdiction properly before the court as a Rule 12(h)(3) motion, despite the government's framing of the motion as a

12(b)(1) motion, because the motion was made after the government's responsive pleading).

## DISCUSSION

Defendant styles her Opposition as an "Opposition to the Motion for Summary Judgment and in Support of a Counter Motion to Dismiss."  ECF No. 119 ("Opp.").  Yet the entirety of the Opposition argues that the Court lacks subject matter jurisdiction and does not otherwise address the arguments raised by Plaintiff.  See Opp.  Defendant's Opposition fails to comply with Local Rule 56.1, requiring that she admit or dispute each fact in Plaintiff's concise statement of facts ("CSF"), ECF No. 111, although Defendant acknowledges that Plaintiff's CSF "represent[s] the law of the case" since it is drawn from prior rulings in this action.  Opp. at 5.[4/]

The Court will proceed by addressing Defendant's argument on subject matter jurisdiction and will otherwise consider the facts asserted by Plaintiff as admitted.

I.    **Subject Matter Jurisdiction**

a. **Rule 41(a)(1)(A)(ii)**

Rule 41(a)(1)(A) provides for voluntary dismissal of an action by a plaintiff without a court order.  If the opposing

---

[4/] Defendant also states that she reserves her "objections in the prior record on this case."  Opp. at 5.

party has not served an answer or motion for summary judgment, the plaintiff may dismiss the action without a court order by simply filing a notice of dismissal.  Fed. R. Civ. P. 41(a)(1)(A)(i); see also Galaza v. Wolf, ___ F.3d ___, 2020 WL 1698434 at n.1 (9th Cir. Apr. 8, 2020) ("Galaza was not required to seek the district court's permission to voluntarily dismiss these claims, because the government never served an answer or a motion for summary judgment." (citing Fed. R. Civ. P. 41(a)(1)(A)(i))).  Otherwise, to obtain dismissal of an action without a court order, a plaintiff must file "a stipulation of dismissal signed by all parties who have appeared."  Fed. R. Civ. P. 41(a)(1)(A)(ii).  In either event, the dismissal "is effective on filing, no court order is required, [and] the parties are left as though no action had been brought." Commercial Space Mgmt. Co. v. Boeing Co., 193 F.3d 1074, 1078 (9th Cir. 1999) (involving a dismissal under Rule 41(a)(1)(A)(i) but referring to dismissals under Rule 41(a)(1) generally); see also Galaza, 2020 WL 1698434 (noting that "Rule 41(a)(1) did not require appellant "to seek permission of the court to voluntarily dismiss her remaining claims").

### b. **The Supreme Court's Kokkonen Decision**

The Supreme Court addressed the possible retention of jurisdiction following a voluntary dismissal by stipulation in Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 114 S.

- 14 -

Ct. 1673, 128 L. Ed. 2d 391 (1994). After the parties reached a

settlement in that case, the district court filed a "Stipulation

and Order to Dismiss with Prejudice," signed by the parties and

by the district judge under the notation "it is so ordered."

Id. at 376-77. The stipulation and order did not reserve

jurisdiction or refer to the settlement agreement. Id. at 377.

The respondent later filed a motion to enforce the settlement

agreement, but the petitioner argued that the court lacked

subject matter jurisdiction over the enforcement action. Id.

The Supreme Court held that district courts have

ancillary jurisdiction to enforce their orders. Thus, if

compliance with the settlement agreement was made part of a

court order, ancillary jurisdiction to enforce the settlement

agreement would exist. Id. at 380-81. In the context of a

stipulation and order for dismissal under Rule 41(a)(1)(A)(ii),

a settlement agreement may be deemed part of a court order if

the court (1) embodies the settlement agreement in its dismissal

order; or (2) explicitly retains jurisdiction over the

settlement agreement in its dismissal order. Id. at 381-82.

"Absent such action, however, enforcement of the settlement

agreement is for state courts, unless there is some independent

basis for federal jurisdiction." Id. at 382.

Because the court order in Kokkonen neither retained

jurisdiction nor incorporated the terms of the settlement

agreement, the district court lacked jurisdiction to subsequently enforce the settlement agreement.  Id. at 380-81.

### c. Requirement for a Court Order

The Kokkonen decision made clear that ancillary jurisdiction to enforce a settlement agreement requires a court order.  Because the parties here entered a self-executing dismissal of the case without any court order, the Court finds there is no ancillary jurisdiction.[5/]  As conceded by Defendant, however, Plaintiff may bring his claim either as a new action in federal court (on the basis of diversity) or in state court.

---

[5/] The Stipulation itself merely references Rule 41(a).  It states: "The parties hereby agree that the above-captioned action is dismissed and discontinued with prejudice, as to the named defendant, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure."  ECF No. 35.  Because it lacks any court order, the document is a voluntary dismissal under Rule 41(a)(1).  Cf. Fed. R. Civ. P. 41(a)(2) (permitting dismissal by court order).  Rule 41(a)(1)(A) provides for dismissal without a court order by either:

> (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
> (ii) a stipulation of dismissal signed by all parties who have appeared.

Because the document takes the form of a stipulation signed by all parties that had appeared, the Court analyzes it as submitted pursuant to Rule 41(a)(1)(A)(ii).  However, since no answer or motion for summary judgment had been filed, the document could be deemed submitted under Rule 41(a)(1)(A)(i).  Both methods of voluntary dismissal are self-executing and either construction would render the same result here.  See Anago Franchising, Inc. v. Shaz, LLC, 677 F.3d 1272, 1276 (11th Cir. 2012) (discussing the "two different modes of dismissal—Rule 41(a)(1), which allows for dismissal without a court order, and Rule 41(a)(2), which requires the court to order the case dismissed"—and further explaining that Rule 41(a)(1) permits a plaintiff to "dismiss an action voluntarily without a court order in two circumstances: by filing a notice of dismissal before the opposing party serves an answer or motion for summary judgment, Fed. R. Civ. P. 41(a)(1)(A)(i), or at any time during the litigation by filing a stipulation of dismissal signed by all parties who have appeared, Fed. R. Civ. P. 41(a)(1)(A)(ii)"); Commercial Space Mgmt. Co. v. Boeing Co., 193 F.3d 1074, 1078 (9th Cir. 1999) ("[I]t is beyond debate that a dismissal under Rule 41(a)(1) is effective on filing, [and] no court order is required . . . .  Unlike a Rule 41(a)(1) dismissal, a Rule 41(a)(2) dismissal requires court approval.").

ECF No. 119 at 22-23.  As discussed below, the court concludes
that Plaintiff's Amended Complaint may be, and hereby is,
construed as a new action.

     The Court previously relied on Sixth and Seventh
Circuit authorities to find diversity jurisdiction alone
sufficient to enforce the settlement agreement.  <u>Limbright v.
Hofmeister</u>, 566 F.3d 672 (6th Cir. 2009); <u>Blue Cross & Blue
Shield Association v. American Express Co.</u>, 467 F.3d 634 (7th
Cir. 2006).  But in reviewing those decisions in conjunction
with the Eleventh Circuit's decision in <u>Anago Franchising, Inc.
v. Shaz, LLC</u>, 677 F.3d 1272 (11th Cir. 2012), the Court
recognizes that a court order is required to maintain the
original action for purposes of enforcing a settlement
agreement.  Although both <u>Limbright</u> and <u>Blue Cross</u> ultimately
relied on diversity jurisdiction, both actions had been
dismissed by a single combined stipulation <u>and court order</u>.
That is, while both cases involved voluntary dismissals, those
dismissals were effected by a court order.[6/]

     Here, a self-executing stipulation with the Court's
approval "as to form" effected the voluntary dismissal; there

_____

     [6/] The Ninth Circuit has not explicitly addressed this issue.  In
<u>O'Connor v. Colvin</u>, 70 F.3d 530, 532 (9th Cir. 1995), the court found that a
stipulation and order failed to comply with the requirements of <u>Kokkonen</u> to
permit subsequent enforcement of the settlement agreement.  The court
mentioned that no other facts justified federal jurisdiction since there was
neither diversity nor any relevant federal statute.  <u>Id.</u>  But despite the
cursory reference to diversity, that case—like <u>Limbright</u> and <u>Blue Cross</u> and
unlike the instant case—involved dismissal by stipulation <u>and court order</u>.

was no court order.  This case is thus more analogous to Anago,

where the parties entered a voluntary stipulation dismissing the

action, and a later-issued court order was deemed inoperative

because the court had been divested of jurisdiction when the

stipulation was filed.  677 F.3d at 1280-81.  The Anago court

explained that

> for a district court to retain jurisdiction over
> a settlement agreement where the parties dismiss
> the case by filing a stipulation of dismissal
> pursuant to Rule 41(a)(1)(A)(ii), either (1) the
> district court must issue the order retaining
> jurisdiction under Kokkonen prior to the filing
> of the stipulation, or (2) the parties must
> condition the effectiveness of the stipulation on
> the district court's entry of an order retaining
> jurisdiction.

Anago, 577 F.3d at 1280.

If the stipulation of dismissal takes effect without a

court order, the court is immediately divested of jurisdiction

and cannot act to enforce the settlement agreement.  Id.

("ancillary jurisdiction allows a district court to effectuate

its orders, not to enforce stipulations"); see also

SmallBizPros, Inc. v. MacDonald, 618 F.3d 458, 463 (5th Cir.

2010) ("Because filing a voluntary stipulation of dismissal

under Rule 41(a)(1)(A)(ii) is effective immediately, any action

by the district court after the filing of such a stipulation can

have no force or effect because the matter has already been dismissed by the parties themselves without any court action.").

Here, the original action was terminated and the Court was divested of jurisdiction when the parties voluntarily dismissed this action without any court order on January 3, 2012.  For the federal court to enforce the settlement agreement on the basis of diversity jurisdiction, then, Plaintiff was required to file a new action.  The Court construes Plaintiff's Amended Complaint as a new action.

### d. The Amended Complaint Constituted a New Action

Plaintiff filed his Amended Complaint on December 20, 2018, asserting diversity jurisdiction.  ECF No. 100, at 2 ¶ 2. Although the Court no longer had jurisdiction over the original action, Plaintiff's Amended Complaint was, in effect, the initiation of a new action.  The Court relies on precedent for construing it as such.

In Janus v. American Federation of State, County, & Mun. Employees, Council 31, 138 S. Ct. 2448, 201 L. Ed. 2d 924 (2018), the Supreme Court approved of a district court construing an amended complaint as a new lawsuit.  In that case, a governor had initially filed an action and the petitioner moved to intervene on the governor's side.  Id. at 2462.  The governor was dismissed for lack of standing, but the district court permitted the petitioner who had intervened on the

governor's side to file an amended complaint.  Id.  The

respondents argued that the petitioner's amended complaint must

be dismissed for lack of standing like the governor's underlying

suit, but the Supreme Court found the petitioner's complaint was

in effect a new action.  Id.

The Supreme Court explained that the respondents'

argument

> rests on the faulty premise that petitioner
> intervened in the action brought by the Governor,
> but that is not what happened.  The District
> Court . . . essentially treated petitioner's
> amended complaint as the operative complaint in a
> new lawsuit.  And when the case is viewed in that
> way, any Article III issue vanishes. . . .  It is
> true that the District Court docketed
> petitioner's complaint under the number
> originally assigned to the Governor's complaint,
> instead of giving it a new number of its own.
> But Article III jurisdiction does not turn on
> such trivialities.

Id. (internal citation omitted).

Similarly, the Ninth Circuit has refused "to insist

upon an empty formalism" of refiling an identical pleading as a

new action.  In United States for Use of Atkins v. Reiten, 313

F.2d 673 (9th Cir. 1963), the appellant submitted a supplemental

pleading introducing a cause of action not alleged in the

original complaint and not in existence when the original

complaint was filed.  Id. at 674.  Appellees objected to the

supplemental pleading, but the court permitted it, explaining

that "no objection could have been raised" if, instead of the

supplemental pleading, the appellant "had instead filed precisely the same pleading as an initial complaint in a new action.  To require appellant to commence a new and separate action in these circumstances would have been to insist upon an empty formalism."  Id. at 675.

In a D.D.C. decision, the court considered whether it had subject matter jurisdiction over an amended complaint. Ulico Cas. Co. v. E.W. Blanch Co., 200 F.R.D. 3 (D.D.C. 2001).  The plaintiffs' initial complaint asserted diversity jurisdiction, but when defendants moved to dismiss, the plaintiffs filed an amended complaint asserting federal question jurisdiction.  Id. at *4.  The defendants argued that the court would not have had jurisdiction over the first complaint, and the plaintiffs could not secure jurisdiction by filing an amended complaint.  Id.  The court rejected this argument, explaining that "if the amended complaint was stricken, all plaintiffs need do is re-file the amended complaint as a new action to put everyone in the same position they would be in if their motion to strike was denied."  Id.  While filing of a new action might impact the statute of limitations analysis, it had "nothing to do" with subject matter jurisdiction.  Id. Regardless of whether the plaintiffs brought a new claim or an amended one, "plaintiffs have brought a matter before the court

which it has the power and concomitant responsibility to adjudicate." Id.

Other courts have found a number of situations merit the construction of an amended complaint as a new action. See, e.g., Morlan v. Universal Guar. Life Ins. Co., 298 F.3d 609, 617 (7th Cir. 2002) (where a plaintiff filed a class action and lost standing but later filed an amended complaint after regaining standing, the court found "the filing of the amended complaint was the equivalent of filing a new suit, and so it wouldn't matter had there been no jurisdiction over Morlan's original suit . . . unless one wanted to make a fuss over the filing fee"); Johnson v. Heublein Inc., 227 F.3d 236, 241 (5th Cir. 2000) ("[A] lapsed right to remove an initially removable case within thirty days is restored when the complaint is amended so substantially as to alter the character of the action and constitute essentially a new lawsuit."); Duplan v. Harper, 188 F.3d 1195, 1199 (10th Cir. 1999) (where "the amended complaint was treated by the parties and the court as the institution of a new suit," the appellate court treated it the same, citing cases implying that in certain circumstances an amended complaint might institute a new action).

The Court here has diversity jurisdiction. While the Court acknowledges that it was divested of jurisdiction when the parties voluntarily dismissed the action without a court order,

it holds that Plaintiff's Amended Complaint constituted the
initiation of a new enforcement action, over which the Court has
diversity jurisdiction.[7/]  As noted earlier, Defendant does not
seriously contest diversity; her Opposition and Counter-Motion
instead demand Plaintiff refile the matter as a new action.  ECF
No. 119 at 22-23 (arguing the Court should "requir[e] Mr.
Ruppersberger to bring any separate enforcement action anew,
either in this District Court in the regular course or in Hawaii
County State Third Circuit Court").   The Court refuses to
require such empty formalism.  Like the Ulico Casualty Co.
court, this Court finds that a matter is before it, which it has
the power and responsibility to adjudicate.  200 F.R.D. at *4.
The Court now turns to the merits of that action.

## II.   Foreclosure on the Kaloli Property

### a. Entitlement to Foreclose

        Plaintiff Ruppersberger first seeks summary judgment
as to his claim for a decree of foreclosure against the Kaloli

---

[7/] This holding does create the problem that the Court's actions taken
after the entry of the voluntary dismissal but prior to the filing of the
Amended Complaint lacked subject matter jurisdiction.  This includes the
Magistrate Judge's entry, and this Court's adoption, of the F&R.  The Court
is therefore precluded from relying on the F&R and this Court's adoption
thereof as the law of the case.  However, Plaintiff himself submitted the
relevant facts as undisputed in his CSF supporting his Motion, and Defendant
did not dispute those facts, as set forth in Plaintiff's CSF, instead solely
contesting the subject matter jurisdiction of the Court.  As stated earlier,
the Court therefore concludes the facts submitted by Plaintiff are
undisputed.  L.R. 56.1(g) ("For purposes of a motion for summary judgment,
material facts set forth in the movant's concise statement will be deemed
admitted unless controverted by a separate concise statement of the opposing
party.").

Property.  "In order to prove entitlement to foreclose, the foreclosing party must demonstrate that all conditions precedent to foreclosure under the note and mortgage are satisfied and that all steps required by statute have been strictly complied with."  Bank of Am., N.A. v. Reyes-Toledo, 139 Haw. 361, 367, 390 P.3d 1248, 1254 (2017) (citing 55 Am. Jur. 2d Mortgages § 575 (Nov. 2016 Update)).  "This typically requires the plaintiff to prove the existence of an agreement, the terms of the agreement, a default by the mortgagor under the terms of the agreement, and giving of the cancellation notice," as well as the plaintiff's "entitlement to enforce the note and mortgage." Id. (citing Bank of Honolulu, N.A. v. Anderson, 3 Haw. App. 545, 551, 654 P.2d 1370, 1375 (Ct. App. 1982); Haw. Rev. Stat. §§ 490:3-301, 3-308, cmt. 2).[8/]

Plaintiff has first clearly shown the existence of an agreement and the terms of that agreement.  Plaintiff holds a Mortgage on the Kaloli Property in amount of $118,000 which Defendant executed as part of the Settlement Agreement.  CSF, Ex. C.  Plaintiff's Mortgage on the Kaloli Property secures the Promissory Note and the Addendum.  CSF Exs. A, B.  The Mortgage

---

[8/] The Hawai`i Supreme Court cites to 55 Am. Jur. 2d Mortgages § 575 for the requirements entitling a party to foreclose.  That treatise further states, "On the other hand, the mortgagee may foreclose where the parties have agreed that upon a certain contingency or default—such as a nonpayment of principal, interest, taxes, or the like—the mortgagee shall have such right." Id.  This provision would apply to Plaintiff here.  However, because Plaintiff complies with either articulation, the Court applies the specific language cited by the Hawai`i Supreme Court.

sets forth Plaintiff's remedies, including his right to foreclose the Mortgage in the event Defendant fails to pay the Promissory Note or breaches a covenant contained in the Mortgage.  CSF, Ex C.

The Promissory Note provided for payment upon the sale of the Kaloli Property, which Defendant agreed to sell by June 30, 2012.  CSF Ex. A.  If the Kaloli Property was not sold by that date, the parties agreed that any tenants would be vacated, and Plaintiff would be authorized to move into the Kaloli Property and to market it for sale.  Id.  To enable Plaintiff to market the Kaloli Property, Defendant executed a limited power of attorney so authorizing Plaintiff.  Id.

Plaintiff has likewise clearly shown a default under the terms of the agreement by the mortgagor.  Plaintiff submits a declaration that, "among other things," Defendant Ramos "has not made any payments on the Promissory Note."  Ruppersberger Decl. ¶ 6-7.

The Court finds that Plaintiff has also given adequate cancellation notice.  This obligation "merely requires that the foreclosing party comply with the notice provisions of the parties' agreement."  Cty. of Kaua`i v. Girald, No. CV 15-00204 LEK-BMK, 2015 WL 5884859, at *5 (D. Haw. Oct. 6, 2015).  The Mortgage here contains a minimal notice requirement:

> Should Mortgagor fail to make any payment as
> provided under the Note, or on the breach of any
> covenant or agreement hereof or in any promissory
> note or terms of any other obligation herby
> secured . . . then the whole amount of all
> indebtedness owing by or chargeable to Mortgagor
> under any provision of this Mortgage or intended
> to be secured hereby shall at the option of the
> Mortgagee and without notice at once become due
> and payable, and with or without foreclosure,
> Mortgagee shall have the immediate right to
> receive and collect all rents and profits due,
> accrued, or to become due.
>
> . . .
>
> Mortgagee may foreclose this mortgage by suit in
> equity . . . .

CSF, Ex C. (Mortgage) (emphasis added).

Further, in contrast to a typical mortgage, the agreements between the parties here specifically contemplated the quick sale of the Kaloli Property, which was to occur by June 30, 2012. CSF, Ex. A. In April 2015, Plaintiff filed a notice of pendency of action with the Hawai`i Bureau of Conveyances regarding the sought compelled sale of the Kaloli Property or, in the alternative, the foreclosure thereof. CSF, Ex. D. Plaintiff has submitted a number of Court filings seeking to compel Defendant to sell the property and pay the Promissory Note. Plaintiff filed the Amended Complaint praying for foreclosure in December 2018 and filed the instant Motion for Summary Judgment seeking that foreclosure in November 2019. To wit, Defendant has been on ample notice regarding her

violations of the agreements and Plaintiff's intention to take possession of the Kaloli Property.

Finally, Plaintiff's entitlement to enforce the Promissory Note and Mortgage is clear from those documents, to which Plaintiff and Defendant here are the signatories. As indicated above, Plaintiff has submitted a declaration that "Defendant RAMOS has not made any payments on the Promissory Note," which Defendant does not dispute. Ruppersberger Decl. ¶ 6. There are no genuine issues of material fact as to the requirements for a decree of foreclosure against the Kaloli Property, and Plaintiff is entitled to summary judgment.

### b. Amount Owed

Although not raised by Defendant, the Court notes two concerns with the total amount of money sought by Plaintiff from the sale of the Kaloli Property. First, the Promissory Note provides for compound interest. Second, Plaintiff seeks all rental proceeds from the Kaloli Property. The Court next addresses each of these concerns.

### i. Interest Award

Under Hawai`i law, "[n]o action shall be maintainable in any court of the State to recover compound interest upon any consumer credit transaction." Haw. Rev. Stat. § 478-7. A consumer credit transaction is defined to include

> credit extended to a natural person primarily for
> a personal, family, or household purpose:  (1) In
> which the principal amount does not exceed
> $250,000 . . . ; or (2) Such credit is secured by
> real property or by personal property used or
> expected to be used as the borrower's principal
> dwelling.

Haw. Rev. Stat. § 478-1.

Although Defendant does not make an argument to this effect, the transaction at issue appears to qualify as a consumer credit transaction under the Hawai`i statute, and the Court therefore does not award compound interest.  Rather, although the Promissory Note provides for compound interest, the Court will only award simple interest as permissible under Hawai`i law.  See In re Anderson, 69 B.R. 105, 109 n.2 (B.A.P. 9th Cir. 1986) ("Hawaii itself has a long held policy adverse to the allowance of compound interest." (citing Haw. Rev. Stat. § 478-7; Bolte v. Akau, 8 Haw. 742, 743 (1892)); United States v. Guerette, No. 09-00133ACK-KSC, 2010 WL 3260191, at *3 n.5 (D. Haw. Aug. 13, 2010) (where the note at issue provided for compound interest, finding that "Hawai`i has a statute that prohibits compound interest" and therefore "the Court is of the opinion that Defendant Jones-Hart is only entitled to simple interest").

At the hearing on the Motion, the Court instructed Plaintiff to file an affidavit calculating interest at 5% per annum simple interest and provided Defendant an opportunity to

respond.  ECF No. 123.  Plaintiff filed his Affidavit on
February 14, 2020.  ECF No. 124.  Defendant did not file a
response.[9/]  The Court finds Plaintiff's calculations appropriate
and therefore adopts the calculations provided by Plaintiff:

> Principal: $118,000.00 (as of 12/21/2011)
>
> (date of Promissory Note).
>
> -- 5% simple interest = $5,900 per year
>
> -- $5,900 divided by 365 days = $16.164 per day
>
> Interest from 12/21/2011 to 12/21/2019 (8 years):
>
> -- $5,900 per year x 8 years: $47,200.00
>
> Interest from 12/22/2019 to 2/7/2020
>
> (hearing date on MSJ) (48 days):
>
> -- 48 days x $16.164 per day: $775.87
>
> **Total Interest as of 2/7/2020: $47,975.87**
>
> **(plus $16.164 per diem interest)**

ECF No. 124, ¶ 4.

### ii. Rental Proceeds

The Mortgage provides that all rents are deemed a part
of the mortgaged premises covered by the Mortgage, and further

---

[9/] The Court's chambers called Defendant's counsel on February 24, 2020
to determine if Defendant intended to file a response and was instructed to
leave a message on counsel's answering machine.  The Court's chambers never
heard back.  On March 30, 2020, the Court filed a minute order directing
Defendant to file a response by April 9, 2020, indicating whether Defendant
had any objection to Plaintiff's declaration, or stating any objections that
Defendant may have, or stating whether additional time was needed to file any
substantive response.  ECF No. 132.  On April 13, Defendant's counsel sent an
email apparently waiving any objection to the interest computation.

gives Plaintiff the right to rental proceeds in the event of the

Defendant's breach:

> Should Mortgagor fail to make any payment as
> provided under the Note, or on the breach of any
> covenant or agreement hereof or in any promissory
> note or terms of any other obligation hereby
> secured . . . with or without foreclosure,
> Mortgagee shall have the immediate right to
> receive and collect all rents and profits due,
> accrued, or to become due.  Such rents and
> profits are hereby assigned to Mortgagee and
> Mortgagee is irrevocably appointed the attorney
> in fact of Mortgagor in the name of Mortgagor or
> in its own name to demand, sue for, collect,
> recover, and receive all such rents and
> profits . . . .

CSF, Ex. C.  Plaintiff therefore concludes he is entitled to all

rental proceeds.  Mot. at 9.

        While the Court agrees the language of the Mortgage

entitles Plaintiff to rents based on Defendant's failure to make

any payments on the Promissory Note, which is secured by the

Mortgage, Plaintiff has not provided any information regarding

the specific amount of rents owed and the Court will not award

rents in the absence of that information.

        Prior to the hearing confirming the sale of the

property, Plaintiff is instructed to file an affidavit

specifying all amounts sought and providing the basis and

calculations for those specific amounts.  See Bank of Honolulu,

3 Haw. App. at 552 ("The exact amounts of interest and other

- 30 -

charges and credits, if any, could be determined after the confirmation of the foreclosure sale.").

The Court notes that under the agreement, Plaintiff was required to demand the rents.  Plaintiff has not submitted evidence that he ever did.  Therefore, Plaintiff is likely only entitled to rents, if any, from the date that the Commissioner is appointed until the date the property is sold.

### III. Rollover Mortgage

Plaintiff seeks an order that, should the sale of the Kaloli Property be insufficient to pay off the Promissory Note and Mortgage, the balance remaining be rolled over into a new promissory note and mortgage on the Akamai Property.  In the alternative, Plaintiff seeks a deficiency judgment against Defendant Ramos.

The Promissory Note explicitly provides that, "should the proceeds from the sale of the 'Kaloli' house be insufficient to pay off the Promissory Note/Mortgage, then the remainder of the balance shall be rolled over into a new Promissory Note and Mortgage on the property located at 12 Akamai Loop, Hilo, Hawaii."  CSF, Ex. A.

Under Hawai`i law, the Court must construe a settlement agreement under ordinary contract principles.  See State Farm Fire & Cas. Co. v. Pacific Rent-All, Inc., 90 Haw. 315, 323-24, 978 P.2d 753, 761-62 (1999).  When the terms of a

contract are definite and unambiguous there is no room for interpretation.  Wong v. Cayetano, 111 Haw. 462, 481, 143 P.3d 1, 20 (2006).

Here, the Promissory Note provides for a rollover mortgage on the Akamai Property in the event the proceeds from the sale of the Kaloli House are insufficient to pay the amount owed.  Defendant has not contested this.  That said, the Court observes that a rollover mortgage or deficiency judgment may not be necessary in this matter.  If, following the foreclosure sale of the Kaloli Property, it appears that the proceeds of such sale shall be insufficient to pay all the amounts owed Plaintiff and a deficiency exists, the Court will rule on the issues of a rollover mortgage or deficiency judgment at that time.

IV.    **Demand for Jury Trial**

Finally, Plaintiff requests that the Court strike Defendant Ramos's Demand for Jury Trial.  "That the Seventh Amendment gives no right to a jury trial in a suit in equity, even though legal issues may be involved, is well settled . . . . This principle has been applied in numerous types of cases including the foreclosure of a mortgage." Honolulu Sav. & Loan Co. v. Reed, 40 Haw. 269, 272 (1953); see also Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41-42, 109 S. Ct. 2782, 2790, 106 L. Ed. 2d 26 (1989) (discussing the Seventh Amendment's right to trial by jury as applicable in

cases where courts determine legal rights, but not where courts sit in equity); Haw. Nat'l Bank v. Cook, 100 Haw. 2, 7, 58 P.3d 60, 65 (2002) (holding that "foreclosure is an equitable action" (citing Honolulu, Ltd. v. Blackwell, 7 Haw. App. 210, 219, 750 P.2d 942, 948 (1988))).

As it relates specifically to judicial foreclosures, a court's entitlement to reach judgment without submitting the case to a jury has been codified in Hawai`i Revised Statute § 667-1.5. The statute provides that circuit courts "may assess the amount due upon a mortgage . . . without the intervention of a jury, and shall render judgment for the amount awarded, and the foreclosure of the mortgage."

"A trial court, sitting in equity, may nevertheless employ an advisory jury." Traxler v. Multnomah Cty., 596 F.3d 1007, 1013 (9th Cir. 2010); see also Honolulu Sav. & Loan, 40 Haw. at 273 ("Equity courts may decide both fact and law, but they may, if they see fit, refer doubtful questions of fact to a jury."). "The ultimate decision, however, rests with the court." Traxler, 596 F.3d at 1013; see also Honolulu Sav. & Loan, 40 Haw. at 273 ("Findings of the kind, however, are not conclusive, and, if not satisfactory, they may be set aside.").

Defendant here is not entitled to a jury trial nor does the Court find it helpful to employ an advisory jury. Defendant's demand for a jury trial is hereby struck.

Finally, the Court notes that since the Court has found that there are no material issues of fact and consequently Plaintiff is entitled to summary judgment, this matter would not proceed to a determination by a jury anyway.[10]

## V.    Decree of Foreclosure

Having held Plaintiff is entitled to foreclose, the Court hereby orders an interlocutory decree of foreclosure.  In view of the ongoing COVID-19 pandemic, the government shutdown and stay-at-home order, the common-law duty to obtain the best price for the property as enunciated in Hungate v. Law Office of David B. Rosen, 139 Haw, 394, 408, 391 P.2d 1, 15 (2017), and the fact that the real estate market is mostly inactive and Hawai`i has temporarily halted evictions, the Court finds that it would be inequitable and not in the interest of either party to proceed with the foreclosure sale under the existing conditions.  The Court thus finds and so orders that the Commissioner may not commence any actions to foreclose on Defendant Ramos's property until further ordered by this Court. Either party may petition the Court to authorize proceeding with the sale when it appears that the foregoing conditions have ended and the real estate market is once again active; and the other party will have an opportunity to respond.

---

[10] Accordingly, the trial and other scheduled dates are withdrawn.

It is hereby ORDERED, ADJUDGED, and DECREED for the reasons stated herein that:

1.    That Plaintiff Ruppersberger's Motion for Summary Judgment and Decree of Foreclosure, and to Strike Defendant's Demand for Trial by Jury, ECF No. 110, is hereby GRANTED; and that Defendant's Counter-Motion to Dismiss, ECF No. 119, is DENIED.

2.    Defendant Ramos is in default under the terms of the Promissory Note, Addendum, and Mortgage, which are currently held by Plaintiff.

3.    The Mortgage currently held by Plaintiff shall be and is hereby foreclosed as prayed, and the property described in the Mortgage, CSF, Ex. C, shall be sold at public auction or by private sale without an upset price.[11/]  Such sale of the Kaloli Property shall not be final until approved and confirmed by the Court.  The Court hereby reserves the question of the exact amount of the indebtedness secured by the Mortgage.

4.    The Commissioner as appointed herein by the Court shall sell the property within four (4) months after the Commissioner is notified of a separate and forthcoming order issued by this Court in which the Court recognizes that the

---

[11/] The Court notes that at the hearing, the parties agreed it would be in their respective best interests to endeavor to sell the property at a private sale.  See Minutes for Court Proceeding on February 7, 2020, ECF No. 123 (noting that, "Parties request authority to sell property by private sale").

COVID-19 threat has passed, other conditions satisfied, and that the foreclosure sale may commence.  The Commissioner shall hold all proceeds of the sale of the property in an interest-bearing account to the credit of this cause subject to the directions of this Court.  Upon payment according to such directions, the Commissioner shall file an accurate accounting of the Commissioner's receipts and expenses.

      5.   Charles M. Heaukulani is hereby appointed by this Court as Commissioner, and as Commissioner he shall henceforth sell the property at foreclosure sale to the highest bidder at the Commissioner's sale by public auction or by private sale, without an upset price, after first giving notice of such sale by publication in at least one newspaper regularly issued and of general circulation in the District of Hawaiʻi.  Said notice shall be published once a week for at least four (4) consecutive weeks, with the auction to take place no sooner than fourteen (14) days after the appearance of the third advertisement.  Said notice shall give the date, time, and place of the sale and an intelligible description of the property, including any improvements, and shall follow the format described in Haw. Rev. Stat. § 667-20.  The Commissioner shall have further authority to continue the sale from time to time at the Commissioner's discretion.  Any change in the time, place, or terms specified in the original notice of sale requires that Plaintiff ensure

- 36 -

that the Commissioner publishes a new notice of postponed sale with the new terms, and such notice shall follow the format described in Haw. Rev. Stat. § 667-20.1.  The public sale shall take place no sooner than fourteen (14) days after the date of the notice of postponed sale, and not less than fourteen (14) days before the rescheduled date a copy of the new notice of postponed sale shall be posted on the mortgaged property and delivered to Defendant, Plaintiff, and any other person entitled to receive such notifications.

6.    No bond shall be required of the Commissioner.

7.    In the event that the Commissioner refuses, or becomes unable, to carry out his duties set forth herein, the Court shall appoint another without further notice of hearing.

8.    The Commissioner shall sell the subject property by foreclosure sale in its "AS IS" condition, without any representations or warranties whatsoever as to title, possession, or condition.

9.    The Commissioner and all persons occupying the subject property shall allow reasonable access to view the subject property, a minimum of two separate days prior to the sale of the subject property, by means of an open house or other reasonable means.

10.    The fee of the Commissioner shall be such as the Court deems just and reasonable, together with actual and

necessary expenses incurred with the sale of the subject property.

11.   The sale so made and confirmed shall perpetually bar Defendant Ramos and all persons and parties claiming by, through or under Defendant Ramos, except governmental authorities enforcing liens for unpaid real property taxes, from any and all right, title and interest in the Kaloli Property or any part thereof.

12.   Plaintiff Ruppersberger is hereby authorized to purchase the Kaloli Property at the foreclosure sale.   The successful bidder at the public auction, or the purchaser in the event of a private sale, shall be required at the time of such sale to make a down payment to the Commissioner in an amount not less than ten percent (10%) of the highest successful price bid or of the agreed price in the event of a private sale, such payment to be in cash, certified check or cashier's check, provided that should Plaintiff Ruppersberger be the highest bidder or the purchaser at a private sale, he may satisfy the down payment by way of offset up to the amount of his secured debts.   The balance of the purchase price must be paid in full at the closing of the sale, which shall take place 35 days after entry of the order confirming the sale; such payment also to be in cash, certified check, or cashier's check.   The balance of the purchase price shall be paid in cash, certified check, or

cashier's check, provided that, should Plaintiff Ruppersberger be the highest bidder or purchaser at a private sale, he may satisfy the balance of the purchase price by way of offset up to the amount of his secured debts, as discussed above, as appropriate.  Costs of conveyancing, including preparation of the conveyance document, conveying tax, securing possession of such mortgage property, escrow services, and recording of such conveyance, shall be at the expense of such purchaser.

13.  If the successful bidder at a public auction or purchaser at a private sale fails to fulfill this requirement, the deposit shall be forfeited and applied to cover the cost of sale, including the Commissioner's fee, with distribution of any amount remaining to be determined by the Court.  The property then shall be again offered for sale under the terms and conditions of this Order.

14.  Pending the sale of the mortgaged Kaloli Property, Defendant Ramos shall take all reasonable steps necessary to preserve the real property (including all buildings, improvements, fixtures, and appurtenances on the property) in its current condition.  Defendant Ramos shall not commit waste against the property, nor shall she cause or permit anyone else to do so.  Defendant Ramos shall not do anything that tends to reduce the value or marketability of the property, nor shall she cause or permit anyone else to do so.  Defendant

Ramos shall not record any instruments, publish any notice, or take any other action (such as running newspaper advertisements or posting signs) that may directly or indirectly tend to adversely affect the value of the property or that may tend to deter or discourage potential bidders from participating in the public auction or private sale, nor shall she cause or permit anyone else to do so.

15. All persons occupying the mortgaged Kaloli Property shall leave and vacate the property permanently within sixty (60) days of the date of the Court's order finding that the COVID-19 threat has passed, other conditions satisfied, and the foreclosure may commence, each taking with them their personal property (but leaving all improvements, buildings, and appurtenances to the property). If any person fails or refuses to leave and vacate the Kaloli Property by the time specified in this Decree, the Commissioner is authorized and directed to take all actions that are reasonably necessary to bring about the ejectment of those persons, including obtaining a judgment for possession and a writ of possession. If any person fails or refuses to remove his or her personal property from the premises by the time specified herein, any personal property remaining on the property thereafter is deemed forfeited and abandoned, and the Commissioner is authorized to remove it and dispose of it in any manner the Commissioner sees fit, including sale, in which

case the proceeds of the sale are to be applied first to the expenses of sale and the balance to be paid into the Court for further distribution.

16.   The Commissioner shall be authorized to take possession and control of the Kalohi Property sixty (60) days of the date of the Court's order finding that the COVID-19 threat has passed, other conditions satisfied, and the foreclosure may commence, or when the property is vacated, whichever occurs first.

17.   The sale can be supplemented with the practices and procedures in the State of Hawai`i and Section 667 of the Hawai`i Revised Statutes.

18.   The Court reserves jurisdiction to determine the party or parties to whom any surplus shall be awarded herein.

19.   At the hearing on confirmation herein above mentioned, if it appears that the proceeds of such sale shall be insufficient to pay all the amounts which are valid claims against Defendant Ramos and a deficiency exists, the Court will rule on the issues of a rollover mortgage or deficiency judgment at that time.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment and Decree of

Foreclosure, and to Strike Defendant's Demand for Trial by Jury,

ECF No. 110, and DENIES Defendant's Counter-Motion to Dismiss,

ECF No. 119.  Accordingly, Plaintiff is entitled to, and the

Court hereby issues, a decree of foreclosure on the subject

property as outlined above.


            IT IS SO ORDERED.

            DATED:  Honolulu, Hawai`i, April 16, 2020.


_____
Alan C. Kay
Sr. United States District Judge

Ruppersberger v. Ramos, Civ. No. 11-00145 ACK-KJM, Order
Granting Plaintiff's Motion for Summary Judgment, Denying
Defendant's Counter-Motion to Dismiss, and Issuing a Decree of
Foreclosure.